UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

FILE NO. 1:21-cv-362

JIMMY BIRCHFIELD                  :
    Plaintiff,                  :
                                  :
                                  :
                                  :         **COMPLAINT**
KELLEX CORPORATION, INC.          :         (Jury Trial Requested)
    Defendant.                  :
_____

    COMES NOW the Plaintiff, JIMMY BIRCHFIELD (hereinafter "Plaintiff"), by and through his undersigned attorney, hereby files this Complaint for damages and other legal and equitable relief from Defendant, KELLEX CORPORATION, INC. ("Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*

### NATURE OF THE CASE

1. This is an action brought by Plaintiff seeking damages from Defendant for acts of retaliation. Defendant's acts of retaliation are in violation of Title VII and any other causes of action that can be inferred from the facts set forth herein.

2. Defendant employed Plaintiff at its furniture plant location at 410 Hogan Street, Morganton, NC 28655. Throughout Plaintiff's employment with Defendant, Plaintiff was subjected to retaliation for engaging in activity protected under Title VII and other applicable statutes.

### JURISDICTION & VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United

1

States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief: (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. §§ 2000e *et seq.,* as amended, and (iii) 42 U.S.C. §§ 1981 *et seq.,* as amended.

4. Venue is proper in this Court in as much as the unlawful employment practices occurred in this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c), and (d), in that Defendant maintains offices and conducts business in this district.

## PARTIES

5. Plaintiff is a person who has been aggrieved by Defendant's actions. He is, and has been, at all relevant times, a resident of North Carolina.

6. At all relevant times, Plaintiff was Defendant's employee and therefore covered by Title VII.

7. Defendant's registered address is 501 Hoyle Street, Valdese, NC 28690. Upon information and belief, Defendant employs over three hundred (300) persons.

8. During all relevant times, Defendant has been an employer covered by Title VII.

9. Defendant transacted and continues to transact business in North Carolina by, among other things, employing persons at 501 Hoyle Street, Valdese NC 28690 located within North Carolina and within this judicial district.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

10. Plaintiff, who has herein alleged claims pursuant to Title VII, has timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

11. On September 30, 2021, Plaintiff was mailed his Notice of Right to Sue from the EEOC.

**STATEMENT OF FACTS**

12. Plaintiff was employed as a Product Development Employee, located at 410 Hogan Street, Morganton, NC 28655 ("Morganton Plant"), from June 26, 2017 to January 31, 2020.

13. Upon information and belief, at all relevant times, Defendant employed a Director of Human Resources, named C.C.[1], who oversaw operations at the Morganton Plant.

14. Upon information and belief, at all relevant times, Defendant employed a Plant Manager, named M.H., who oversaw operations at the Morganton Plant.

15. Upon information and belief, the Director of Human Resources was the most-senior Defendant official at the Morganton Plant with regards to personnel.

16. The Director of Human Resources was responsible for Defendant's day-to-day operations at the Morganton Plant.

17. The Director of Human Resources had the authority to hire employees to work for Defendant at the Morganton Plant.

18. The Director of Human Resources had the authority to terminate Defendant employees who worked at the Morganton Plant.

19. The Director of Human Resources had the authority to discipline Defendant employees who worked at the Morganton Plant.

---

[1] With the exception of Birchfield, each individual referenced "by name" in this complaint shall be identified by his/her initials.

20. The Director of Human Resources was responsible for implementing Defendant's policies and procedures regarding employees of Defendant who worked at the Morganton Plant, specifically including any anti-harassment and retaliation policies.

21. In the alternative, upon information and belief, the Plant Manager was the most-senior Defendant official at the Morganton Plant with regards to personnel.

22. In the alternative, the Plant Manager was responsible for Defendant's day-to-day operations at the Morganton Plant.

23. The Plant Manager had the authority to hire employees to work for Defendant at the Morganton Plant.

24. The Plant Manager had the authority to terminate Defendant employees who worked at the Morganton Plant.

25. The Plant Manager had the authority to discipline Defendant employees who worked at the Morganton Plant.

26. The Plant Manager was responsible for implementing Defendant's policies and procedures regarding employees of Defendant who worked at the Morganton Plant, specifically including any anti-harassment and retaliation policies.

27. In the alternative, at all times relevant herein, M.H. and C.C. jointly had the authority to hire, terminate, and discipline Defendant employees that worked at the Morganton Plant.

28. Additionally, in the alternative, M.H. and C.C. were jointly responsible for implementing Defendant's policies and procedures regarding employees of Defendant who worked at the Morganton Plant, specifically including any anti-harassment and retaliation policies.

29. M.H. and C.C. were at all times relevant herein acting within the scope of their employment, at the direction of Defendant, and as agents/employees of Defendant.

30. In or about April 2019, M.H. was hired at the Morganton Plant as Plant Manager.

31. M.H. was hired after his employment ended at Defendant's Hildebrand (NC) furniture plant (Hildebrand Plant).

32. Shortly after his tenure began at the Morganton Plant, M.H. began hiring his friends from the Hildebrand Plant.

33. Moreover, upon information and belief, M.H. ensured that his friends (new hires) from the Hildebrand Plant were paid more than their similarly situated colleagues that were already employed at the Morganton Plant.

34. Plaintiff became aware of the pay disparities and asked M.H. to give the original Morganton Plant employees mutual respect as far as their pay.

35. In response, M.H. told Plaintiff that he "had to do what he had to do."

36. Shortly thereafter, the pay disparities began to cause tension within the Morganton Plant.

37. Upon information and belief, M.H. had a close friendship with Defendant employee R.H.

38. R.H. was hired by M.H. and brought to the Morganton Plant from the Hildebrand Plant.

39. In or around April 2019, R.H. began sexually harassing Defendant employee J.J. after his employment began at the Morganton Plant.

40. R.H.'s sexual harassment of J.J. included but was not limited to repeated inappropriate comments about her body.

41. More specifically, he made repeated comments to J.J. about the size of her posterior.

42. Plaintiff became aware of R.H.'s sexual harassment of J.J. and informed M.H.

43. M.H. informed Plaintiff that he would talk to R.H. about the complaints.

44. Nonetheless, R.H. continued to sexually harass J.J. despite her direct objections and Plaintiff's complaints to M.H.

45. On or about December 13, 2019, Plaintiff contacted C.C., the Director of Human Resources, about R.H.'s sexual harassment of J.J because nothing was done to stop continued sexual harassment by M.H.

46. C.C. then informed Plaintiff that she would speak with M.H. about the allegations, even though M.H. had not addressed the issue after Plaintiff previously notified him of the sexual harassment allegations.

47. Thereafter, an investigation was conducted by C.C. and R.H. admitted to Defendant (through C.C.'s investigation) that he made inappropriate sexual comments to J.J. about her butt on at least one occasion.

48. Conversely, J.J. informed Defendant (through C.C.'s investigation) that R.H. had been sexually harassing her for several months and had been constantly making inappropriate remarks regarding her body.

49. Furthermore, J.J. informed C.C. that she never consented to or approved R.H.'s sexual harassment.

50. Upon information and belief, R.H. was employed by Defendant as a manager/supervisor at all times that he sexually harassed J.J.

51. Upon information and belief, R.H.'s conduct occurred while he directly supervised J.J.

52. R.H. was not terminated for his sexual harassment of J.J.

53. Upon information and belief, D.C., another employee of Defendant simultaneously filed a charge of discrimination with the EEOC alleging harassment by Defendant.

54. In the alternative, upon information and belief, D.C. made a complaint of harassment with Defendant through C.C.

55. Both J.J. and D.C. were placed on leave by Defendant, rather than R.H. (the employee accused of sexual harassment by J.J.), while the allegations were investigated.

56. Upon information and belief, it was Defendant's intention to fire J.J. and D.C. for their sexual harassment allegations; however, they did not do so to avoid further legal ramifications.

57. J.J. and D.C. were brought back to work by Defendants on December 27, 2019.

58. Plaintiff was thereafter physically threatened by an employee of Defendant in front of three (3) witnesses.

59. Said employee had been employed with Defendant for less than 90 days.

60. Plaintiff thereafter reported the physical threat made by said employee of Defendant to C.C. who allegedly talked to the employee about his conduct.

61. The employee who threatened Plaintiff in front of three (3) witnesses was not terminated for his actions against Plaintiff.

62. Upon information and belief, said employee was not reprimanded for his physical threat towards Plaintiff.

63. Upon information and belief, said employee that physically threatened Plaintiff was close friends with M.H. and threatened Plaintiff on M.H.'s behalf.

64. During his employment, Plaintiff was subjected to a rampant culture of retaliation for his efforts to remedy sexual harassment and disparate treatment faced by other employees at the Morganton Plant.

65. On January 31, 2020, Plaintiff was terminated by Defendant.

66. Plaintiff's termination was approved by both M.H. and C.C.

67. Prior to his termination, M.H. told Plaintiff that he "was not helping the company move forward," even though January 2020 was Defendant's largest month of production.

68. Plaintiff's employment record with Defendant was exemplary throughout the course of his employment.

## FIRST CAUSE OF ACTION
### Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*
*(Retaliation)*

69. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

70. Plaintiff lodged complaints with Defendant (from November 2019 through December 2019) regarding sexual harassment being received by fellow employees and, as such, engaged in protected activity under Title VII.

71. Defendant retaliated against Plaintiff by making his job performance more difficult when it endorsed and excused bad conduct towards him from a fellow employee as described in paragraphs 58 through 63.

72. Defendant also retaliated against Plaintiff by terminating him on January 31, 2020 for engaging in protected activity.

73. Plaintiff was terminated for no reason (other than engaging a protected activity); however, other employees kept their jobs after committing workplace activities in direct violation of Defendant's policies, rules, and procedures. Furthermore, Defendant fostered a hostile work environment by its inaction in correcting multiple complaints of various forms of harassment.

74. The conduct alleged herein violates Section 704 of Title VII of the Civil Rights Act of 1964, amended, 42 U.S.C §§ 2000e *et seq.*

75. The unlawful employment practices complained of above were intentional.

76. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

77. Plaintiff's requests for relief are set forth below.

WHEREFORE, Plaintiff, JIMMY BIRCHFIELD, respectfully requests judgment against Defendant as follows:

1. That the Court impanel a jury to hear his cause;

2. A judgment declaring that the practices complained of herein are unlawful and in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.;*

3. All damages which Plaintiff has sustained because of Defendant's conduct, including back pay, front pay, benefits, general and specific damages for lost compensation, and job benefits he would have received but for Defendant's retaliatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

4. Exemplary and punitive damages in an amount commensurate with Defendant's ability and to deter future malicious, reckless, and/or intentional conduct;

5. Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees and other costs;

6. Pre-judgment and post-judgment interest, as provided by law;

7. That the Court retain jurisdiction over Defendant until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

8. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Plaintiff also seeks injunctive relief, including, but not limited to:

9. Training regarding the prohibition against retaliation for engaging in protected activity for all of Defendant's supervisors.

10. Training of all employees regarding retaliation, including the reporting procedures for reporting such retaliation, conducted by reputable outside vendors.

11. Supervisory discipline up to and including termination for any employee who engages in discrimination based upon sex, including any employee who engages in retaliatory practices.

12. Monitoring by the Court or a federal agency to ensure that Defendant complies with all injunctive relief; and

13. Plaintiff further demands that he be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: December 29, 2021

Respectfully submitted,

/s/ M. Anthony Burts II
M. Anthony Burts II
Attorney for Plaintiff
N.C. State Bar No.: 49878
PO Box 102
Newton, NC 28658
Telephone (704) 751-0455